Argued and submitted January 6, affirmed on appeal and cross-appeal
September 28, 2005

In the Matter of the Marriage of

Maurice Dean MITCHELL,
*Appellant - Cross-Respondent,*

*and*

Marlene Ann MITCHELL,
*Respondent - Cross-Appellant.*

15-95-00402; A122791

120 P3d 491

George W. Kelley argued the cause and filed the briefs for appellant - cross-respondent.

Inge D. Wells argued the cause for respondent - cross-appellant. With her on the brief was Wells & Wells.

Before Wollheim, Presiding Judge, and Schuman, Judge, and Edmonds,* Judge.

WOLLHEIM, P. J.

---

* Edmonds, J., *vice* Ceniceros, S. J.

**WOLLHEIM, J.**

Husband appeals from a judgment modifying a modification of the initial dissolution judgment and wife cross-appeals. Husband makes three assignments of error. First, husband argues that the trial court erred in finding that his increase in income was a substantial change in circumstance authorizing an upward modification of spousal support. In husband's second and third assignments of error, he alternatively argues that if the modification was appropriate, the amounts of the modification were excessive. On cross-appeal, wife assigns error to the trial court's decision to make the judgment effective July 1, 2003, rather than retroactive to January 1, 2003. We review *de novo*, ORS 19.415(3), and affirm.

In 1995, husband and wife entered into a stipulated judgment of dissolution wherein wife was "awarded indefinite spousal support in the sum of $5000 per month[,]" and husband was required to "maintain insurance on his life in the amount of $200,000 with [wife] named as primary beneficiary[.]" At that time, husband was employed as the CEO of the Lane Individual Practice Association (LIPA) and earned a base salary of approximately $10,000 per month, plus potential bonuses.[1] Wife was, and still remains, in poor health, preventing her from working full-time.[2] Then, in 1998, husband lost his job with LIPA. He obtained new employment with ABCT, Inc., at a salary that paid him approximately $4,500 a month, substantially less than his previous job. Due to the decrease in husband's salary, husband filed a petition requesting a downward modification of his support amount. A modified judgment was entered in 1999, reducing husband's support requirement to $2,000 per month and his life insurance obligation to $100,000.

---

[1] The parties dispute whether the original 1995 support amount was based on husband's base salary, or whether the support award was based on his base salary plus his potential bonuses. That point of contention is part of husband's argument in his second assignment of error, and will be discussed as part of that assignment of error.

[2] At the time of the initial dissolution judgment, wife worked part-time as a nurse.

Some six months after the 1999 modification, husband's income from ABCT, Inc., increased to approximately $7,500 per month. In addition, starting in 2002, husband started receiving social security benefits of approximately $1,600 per month. Husband's employment also provided him with numerous fringe benefits,[3] and husband's new wife also worked full-time, earning approximately $50,000 per year. In short, husband's overall financial situation had substantially improved since the 1999 modification judgment.[4]

In light of those facts, in December 2002, wife filed a motion for modification of the 1999 judgment, asking for restoration of husband's support obligations to the level in the original 1995 judgment. The trial court agreed that a modification was warranted; it entered a judgment increasing husband's support obligation to $4,250 per month and increasing husband's required life insurance obligation back up to $200,000. However, the judgment made the support obligation effective July 1, 2003, not retroactive to January 1, 2003, as wife requested in her petition. Husband appeals from that judgment and wife cross-appeals.

On appeal, husband makes three assignments of error. First, husband argues that the trial court erred because an increase in income alone is insufficient to constitute a substantial change in economic circumstances that warrants modification, citing *Weber and Weber*, 337 Or 55, 91 P3d 706 (2004). Second, husband argues that if a modification is warranted, the trial court erred in calculating the support amount. Specifically, husband argues that the original support amount of $5,000 in the 1995 judgment was based on his salary and bonuses, approximately $15,000 per month, not just his $10,000 per month base salary, making the original support amount around 30 percent of his total income. Thus, husband argues, the trial court erred in making his new support obligation roughly 50 percent of his current

---

[3] Fringe benefits provided to husband through his employment included free lodging, a company-owned car, free meals, and reimbursement for other expenses husband incurred traveling to Grants Pass for the work week. Husband and his new wife reside in Springfield.

[4] There was also evidence presented at trial that husband had restructured his debt and received a severance payment of approximately $130,000 from LIPA, which he used to significantly pay down his debts.

income. Third, husband argues that the trial court erred in increasing his life insurance obligation back up to $200,000, since his income is not at the level it was at the time of the original 1995 judgment.

In response, wife first argues that *Weber* is distinguishable because that case involved a modification of an initial judgment of dissolution, not a modification of a modified judgment that seeks to restore the parties to their respective positions under the initial judgment of dissolution. Second, wife argues that the parties based the original support amount on husband's base $10,000 per month salary in 1995, and that husband's assertion lacks credibility because he switches positions on the level of his salary depending on the benefit to him. Third, wife argues that increasing husband's life insurance obligation simply restores the parties to their respective positions under the original divorce decree.

On cross-appeal, wife argues that it was inequitable for the trial court not to make husband's new support obligation retroactive. Husband responds that the court did not have a compelling reason to do so.

We begin with husband's first assignment of error. ORS 107.135(3)(a) authorizes a court to "reconsider its order of support" when there is a "substantial change in economic circumstances of a party[.]" In *Weber*, the court held that,

> "[A] post-dissolution increase in a payor spouse's income, unaccompanied by any showing of, for example, a change in the payee spouse's needs, is ordinarily not a substantial change in economic circumstances within the substantive meaning of that statutory phrase."

337 Or at 68 (footnote omitted). Accordingly, the court denied the wife's petition for modification because the wife only produced evidence of an increase in the husband's income without any showing of an increase in need. *Id.* at 69.

Husband argues that *Weber* controls because wife only produced evidence of an increase in income without showing that her need has increased as well. Wife argues that *Weber* is distinguishable because it involved the modification of an initial support judgment. We agree with wife that *Weber* is distinguishable. The court in *Weber* recognized three principles underlying the modification of spousal

agreements. First, the court recognized that "agreements regarding spousal support—agreements made without fraud or misrepresentation, entered into freely, and approved by the courts—should be enforced, absent contravening public policy concerns." *Id.* at 64. The second *Weber* principle was "that the criteria for modifying support awards are different than those used to determine them initially." *Id.* at 65. Whereas initial support levels are based on the standard of living the parties enjoyed before the divorce, modifications are "based more properly on considerations of the payee spouse's increased needs and the payor spouse's concomitant ability to meet them." *Id.* at 65-66. The third principle observed by the *Weber* court is that "courts should not interpret statutory support obligations in a manner that continues the rights of the parties as if no dissolution judgment had been granted[.]" *Id.* at 66.

■  Husband's position, that the rule in *Weber* controls here, is contrary to the foregoing principles. First, wife is requesting only that support be reinstated to what the parties stipulated to in the initial dissolution judgment. To allow husband to obtain a downward modification based on his decrease in income, and not allow wife to obtain an upward modification based on husband's increase in income, would not only be inequitable, but it would disregard the terms of the original agreement that both parties freely entered into. Second, wife's need and standard of living were established in the initial 1995 dissolution judgment. When husband obtained a downward modification, wife's need and standard of living did not decrease proportionally to husband's decrease in income. Her need and standard of living are the same as they were in the initial judgment; wife is asking only that husband meet that need commensurate with his ability to pay. Lastly, allowing an increase in support would not continue husband's obligations as if the parties were still married. Wife is not seeking to further share in husband's good fortunes and be afforded a standard of living beyond what they enjoyed during their marriage; she is asking only that husband meet the obligation of support he agreed to in the initial judgment.

Therefore, we hold that, under these particular circumstances, *Weber* does not apply. Husband stipulated to pay spousal support based on the parties' income at the time

of the initial judgment; he cannot now retract that agreement.

■    We next address husband's second assignment of error. Husband acknowledges that a court's job in modifying a dissolution judgment is to maintain the relative positions of the parties as set out in the initial judgment. *Bates and Bates*, 303 Or 40, 47, 733 P2d 1363 (1987). Based on that acknowledgment, husband argues that the initial support amount of $5,000 per month was based on his base salary, approximately $10,000 per month, plus his bonuses, making his monthly income approximately $15,000 per month. Thus, husband argues, the initial support amount was around 35 percent of his monthly income, not 50 percent, as husband asserts the judgment reflects.

■    Maintaining the relative positions of the parties in the initial judgment is not an exercise in mathematical precision, although the proportionality of the payee spouse's initial award to the payor spouse's income at the time is a good starting point. *McArdle and McArdle*, 186 Or App 672, 677, 64 P3d 1178 (2003). Rather, spousal support should be set as an amount that is "just and equitable for one party to contribute to the other," ORS 107.105(1)(d), taking into account "all of the circumstances that have changed since the dissolution, including the noneconomic ones." *McArdle*, 186 Or App at 677.

In fashioning this award, the trial court concluded that the initial support amount of $5,000 was most likely based on husband's base salary of $10,000 per month, which is roughly a 50 percent allocation. In addition, the trial court looked at the "totality of the circumstances," and accounted for each parties receipt of social security income, and husband's decrease in living expenses due to the income of his new wife, debt reduction, and debt restructuring. The trial court also considered the various fringe benefits received by husband through his new job, including free meals and lodging, and a company-owned vehicle. The trial court ultimately concluded that, based on the foregoing, that an increase in spousal support to $4,250 per month would be "a fair, just and equitable amount for spousal support in light of the change of circumstances."

The initial $5,000 per month level of support was reached pursuant to a stipulated agreement; thus, there is no record of how the parties arrived at that amount. However, the trial court noted that, in the 1999 modification proceedings, both parties represented that husband's salary was $10,000 per month at the time the initial support amount was set.[5] There is no evidence in the record to persuade us that the trial court committed any error in reaching the conclusion that husband's 1995 salary was $10,000 per month, and, in any event, the trial court based its modification award on the "totality of the circumstances," not simply a straight percentage of husband's current salary.

We see no reason to disturb the trial court's disposition of the matter because there is no showing that the trial court misapplied any equitable or statutory considerations. *Kunze and Kunze*, 337 Or 122, 136, 92 P3d 100 (2004). Therefore, we reject husband's second and third assignments of error and wife's cross-assignment of error without further discussion.

Affirmed on appeal and cross-appeal.

---

[5] In husband's affidavit in support of his 1999 petition for modification, he stated that "[a]t the time the divorce decree was entered I was earning approximately $10,000 gross per month." In wife's hearing memorandum, she stated that "[b]ased upon the length of the marriage, Wife's poor health, and Husband's representation that he earned approximately $10,000 per month, Respondent Wife was awarded permanent spousal support in the sum of $5,000 per month." Wife then went on to complain that husband had underrepresented his income in the initial proceeding. If wife had prevailed and the initial support amount was based on the $15,000 per month salary that wife requested in the initial proceeding, it seems unlikely that wife would be complaining about it in her memorandum to the court in the 1999 modification proceedings.