Argued and submitted February 13, affirmed October 11, 2006

In the Matter of the Marriage of

Kathleen M. BONI,
nka Kathleen M. Thompson,
*Respondent,*
*and*

Henry Louis BONI,
*Appellant.*

00DS0884MA; A127780

145 P3d 331

Terrence B. O'Sullivan argued the cause for appellant. With him on the briefs was Merrill O'Sullivan LLP.

Steven D. Bryant argued the cause for respondent. With him on the brief was Bryant, Emerson & Fetch, LLP.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge,* and Linder, Judge.

LINDER, J.

.

---

* Brewer, C. J., *vice* Richardson, S. J.

**LINDER, J.**

Husband appeals the denial of his motion to terminate his obligation to pay spousal maintenance support. He argues that the trial court erred in concluding that wife's economic circumstances, due to her remarriage, have not substantially changed since entry of the judgment dissolving the parties' marriage. We review *de novo*, ORS 19.415(3), and affirm.

Husband and wife were married for 25 years. Husband, a dentist, earns over $300,000 per year and has maintained that approximate salary for at least the past 10 years. Throughout their marriage, wife assisted husband with his dental practice as an office manager. They separated in 2000, and their marriage was dissolved in 2002. At that time, wife was 58 years old. Since the parties' separation, wife's only employment has been as a part-time substitute teacher, earning about $900 a month. During most of the parties' separation (from early 2001 until April 2002), wife lived with a boyfriend (Thompson) in Wyoming. Husband was aware of that cohabitation.

During the dissolution proceeding, a central disagreement between the parties was the extent to which Thompson financially provided support to wife while he and wife were cohabiting. Specifically, wife's initial affidavit of claimed expenses did not reflect her cohabitation with Thompson or any financial contribution from him. Husband responded to that omission by asserting that "[wife] continues to spend approximately 75% of her time in the State of Wyoming. Her claimed expenses do not reflect the economic benefit she receives from cohabitation." Wife then amended her expense affidavit to reflect her cohabitation with Thompson, although her claimed expenses differed only minimally from her first affidavit. Husband disagreed. In a statement that he filed shortly before the dissolution, husband asserted that wife and Thompson's finances were significantly commingled and that, because of that commingling, their cohabitation should be treated as a marriage for support calculation purposes. Wife responded that she and Thompson "ha[d] no specific plans concerning their future

and [Thompson's] contribution to her lifestyle [was] minimal and should play no part in the spousal support calculation."

Ultimately, the parties resolved their disagreement by stipulating to an appropriate amount of spousal support rather than litigating the issue. In doing so, they executed a marital settlement agreement (MSA) under which husband is obligated to pay wife spousal maintenance of $3,500 per month for 10 years and compensatory support of $1,000 per month for five years. The MSA identified the following bases for the maintenance award:

> "The parties agree this support shall be spousal maintenance and this award reflects the duration of the marriage, the parties' age, the standard of living established during the marriage, *the parties' current living situations*, and the husband's vastly greater earning capacity as compared to wife."

(Emphasis added.) The trial court approved the MSA and entered a stipulated dissolution judgment consistent with it. In particular, the stipulated judgment identified the following reasons for the $3,500 per month maintenance award:

> "The court finds that based on the stipulation of the parties, *the parties' respective living situations*, the disparity in their earning capacities and the length of the marriage and their age, this support shall be maintenance support pursuant to ORS 107.105(1)(d)(C)."

(Emphasis added.)

Soon after the dissolution was final, Thompson proposed to wife. About a year later, wife and Thompson married. One year after wife's remarriage, in June 2004, husband moved to terminate his support obligation on the ground that wife's remarriage constituted a substantial change in circumstances due to the financial contribution that Thompson now makes to wife's support. The trial court concluded that the change in wife's economic situation was not substantial and denied the motion.

■ On appeal, the parties effectively renew the positions they took in the proceedings below. Husband relies primarily on a comparison between wife's 2002 expense affidavit and

the 2004 expense affidavit that she prepared for the modification hearing. Husband asserts that, as a result of wife's remarriage to Thompson, wife's monthly expenses have decreased substantially. Husband's position is that, because the remarriage was not contemplated at the time of the dissolution proceeding, the change in wife's economic circumstances is unanticipated as well as substantial, thus justifying modification or termination of the original award. *See* ORS 107.135(3)(a) (spousal support can be modified based on substantial change in economic circumstances).

Wife, in response, points out that Oregon courts have consistently held that cohabitation may be tantamount to remarriage for support termination/calculation purposes if certain factors are met. *Morrison and Morrison*, 139 Or App 137, 144, 910 P2d 1176 (1996); *Ho and Ho*, 93 Or App 421, 424, 762 P2d 344 (1988). As a result, according to wife, the essential circumstances on which husband relies—wife and Thompson's cohabitation and commingling of their funds—existed when the stipulated dissolution judgment was entered and had been known to husband for 15 months preceding the entry of that judgment. According to wife, the cohabitation arrangement was taken into account when the parties agreed on a resolution of the spousal support issue in 2002. Wife therefore argues that her circumstances have not changed in any substantial or unanticipated way since the original spousal support award. As we explain, we agree with wife.

■ An award of spousal maintenance may be modified if there is a substantial, unanticipated change in economic circumstances since the time of the original award. ORS 107.135(3)(a); *Tomos and Tomos*, 165 Or App 82, 87, 995 P2d 576 (2000). The burden of showing that circumstances have changed is on the party requesting the change—in this case, husband. *Maier and Maier*, 137 Or App 15, 18, 902 P2d 1214 (1995), *rev den*, 322 Or 644 (1996). Although remarriage itself does not necessarily constitute a substantial change in the economic circumstances of a party, remarriage may represent a substantial change in circumstances requiring termination or modification of support when it supplants the purposes behind the original award. *Bates and Bates*, 303 Or 40,

46, 733 P2d 1363 (1987); *Morrison*, 139 Or App at 145. The first step, then, is to determine the purposes of the award; the second step is to decide whether remarriage satisfies them. *Moser and Gilmore*, 184 Or App 377, 380-81, 56 P3d 417 (2002). To determine the purposes of the original award, we look to the agreement negotiated by the parties. As a general principle, Oregon courts enforce agreements voluntarily entered into by the parties, because such an agreement is the court's only measure of the equities between the parties. *Weber and Weber*, 337 Or 55, 64-65, 91 P3d 706 (2004); *McDonnal and McDonnal*, 293 Or 772, 779, 652 P2d 1247 (1982).

Here, both the stipulated judgment and the MSA attached to it identified the basis for the maintenance support award. As set out in the MSA, the parties agreed that five factors justified the maintenance support amount to which they stipulated. Those factors were: (1) the duration of the marriage; (2) the parties' ages; (3) the standard of living established during the marriage; (4) the "parties' current living situations"; and (5) husband's vastly greater earning capacity as compared to wife's. In seeking modification or termination of the original spousal support award, husband relies on a change to only one of the four factors—the parties' current living situations.

Considering the overall basis for the award and the extent to which, on this record, wife's current living situation may have changed, we agree with the trial court that the change is neither substantial nor unanticipated. Certainly, husband was aware that wife and Thompson were cohabiting. The fact that wife receives some economic assistance from Thompson was not an unanticipated event since the dissolution. After reviewing the record, we are satisfied that husband was aware of wife's financial entanglement with Thompson well before the dissolution was final. To be sure, the parties disputed the extent of that entanglement. Husband asserted it was extensive; wife asserted it was not. To some degree, the parties traded positions at the modification hearing, with wife asserting that she and Thompson had more extensively—if very informally—commingled their finances by the time of the dissolution, while husband

asserted that wife should be held to her earlier representations that the commingling was minimal.[1]

The difficulty with husband's position, however, is that the stipulated support award does not reflect a particular understanding as to the amount of support that wife was or was not receiving from Thompson. The facts pertaining to Thompson's and wife's commingling of their finances were never adjudicated or established. Instead, the parties' dispute on the point was settled through the stipulated support agreement. The parties' agreement thus was predicated on an uncertain set of facts regarding Thompson's actual financial contributions to wife's expenses, and it represented the parties' negotiated solution to that uncertainty. Necessarily, then, when the parties included their "current living situations" as a basis for the award, the award contemplated wife's cohabitation with Thompson but did not reflect any particular understanding as to wife's precise economic circumstances due to that cohabitation. Given that wife's precise economic circumstances were not the basis of the support award, we do not find that variation in her expenses between 2002 and 2004 was sufficiently substantial to impeach the basis for the original award.[2]

---

[1] At the modification hearing, wife testified that her statement in 2002 that Thompson's contribution to her lifestyle was minimal at that time was accurate. She went on, however, to describe a "casual" expense-sharing arrangement that she and Thompson had in place when the dissolution was entered, one in which she gave Thompson around $1,000 a month to pay bills while she lived with him. She also described Thompson as paying for some of her food, clothing, and transportation expenses around the time of the dissolution in 2002. Wife said that the expense-sharing arrangement was in 2002 and remains in 2004 fairly informal and that it has not substantially changed. Thompson testified similarly.

[2] Husband argues that wife's expenses in her 2004 expense affidavit establish a reduction in her housing, utility (excluding telephone), and medical insurance expenses of $1,623, which is a direct result of Thompson's contributions. That calculation is based on husband's understanding and assertion that, in her 2002 expense affidavit, wife claimed a housing expense of $1,582. We read wife's 2002 expense affidavit to claim a housing expense of only $1,000. Based on our review of the record, it appears that wife's housing, utility (excluding telephone), and medical insurance costs actually decreased by $1,041 from 2002 to 2004, taking into account Thompson's testimony at the modification hearing that his business now pays wife's medical insurance premium. Overall, it appears that wife's total expenses decreased by about $1,339. Some of those decreases were due to support provided by Thompson (e.g., her housing costs decreased from $1,000 to $400, and her food and household expenses decreased by $225). But some of the change was due to other circumstances (e.g., wife had medical complications and expenses in 2002 that she did not have in 2004). At the same time, in 2004, wife also had new

In sum, husband has not demonstrated that wife's remarriage constitutes a substantial change in economic circumstances that supplants the purposes of the original support award that he and wife agreed on. Wife's living situation has not significantly changed since the dissolution was finalized in 2002. Nor have any of the other factors enumerated in the dissolution agreement changed. Further, because husband was aware before the dissolution settlement of wife's cohabitation with Thompson and their expense-sharing arrangement (which wife and Thompson assert has not changed), the changes in wife's claimed expenses after her marriage were not unanticipated.

Affirmed.

---

expenses of nearly $20,000 that she had not incurred in 2002 (*i.e.*, legal expenses and treatment costs related to her and husband's adult son). As a whole, we do not find that wife's economic position has improved to the degree that husband asserts.